Good morning. My name is Pete Domenici Jr. I'm an attorney in Albuquerque, New Mexico. I'm part of this case because Dr. Krolik has been my client since the early 1990s. He lived in Albuquerque at that time. I watched him go through medical school, graduate when he was 52 years old, and he's sitting here at 63 years old, an unlicensed doctor. He's failed the national medical exam nine times. Thank you. What I'd like to do is really crystallize our argument. And we have I think we have an issue of first impression for this circuit and for the country. And I know this circuit has written some important decisions on the ADA. And really there's two sections of the ADA that apply here. And once I'm looking at them and then looking at the facts, I think summary judgment is inappropriate. The two sections are the definition of disabled, which has subpart C, which is the whole basis of this appeal, which is if someone is regarded as having an impairment, they are disabled. And then the second part. But that isn't the problem here that the board didn't consider your client to be disabled? If they considered your client to be disabled, they would have granted the accommodation that you want. Absolutely. And that's why we went to court, Your Honor. So how is it that you can make an argument that says, well, he should be regarded as disabled, when the point of it is that the defendant declined to regard him as disabled? Because when we did discovery, and essentially this board operates like the Star Chamber, Your Honor, they put on their website, we give accommodations for ADHD. They tell people that. My client's doctor said, Dr. Krolich, my client, you have the most severe case of adult hyperactivity I've ever seen. Submitted all that diagnostic information, and they challenged his diagnosis. They did not make a decision other than on his diagnosis. Let me make sure I understand your argument. If you were making an argument to us that says Dr. Krolich is disabled, they failed to recognize that, so they violated the ADA. That I understand. That's not the argument I read from you. The argument I read from you says, well, they were not arguing he's disabled. We're arguing that they regarded him as disabled. But they didn't. That was the whole problem. I just don't see how your argument makes any sense. Okay. Well, they regard, because we did discovery, and we tried to find out, how do they determine people with ADHD are disabled? Exactly the point you're requesting. And we had a discovery fight with that, because they didn't want to disclose that, even though their website says we give this accommodation. They don't give any data on that. Let me try it this way. Did the board conclude that your client was disabled? Are you talking about the board? So you agree that the defendant did not regard your client as disabled? The defendant, I agree with that. Then what's your argument? My argument is that the defendant's practice is that if people diagnosed with ADHD are regarded as disabled, and that is a factual issue for the trial court in this case. But so what? If they didn't regard him as disabled, they couldn't have discriminated against him because they still regarded him. Your Honor, the section about discrimination that has been cited by the National Board of Medical Examiners, the Ninth Circuit decision, talks about discrimination by employers. And that case has nothing to do with this case, that statute. And that's what I was going to say. There's a statute and there's a U.S. Supreme Court that says where someone is disabled, you cannot discriminate against them. And that's the Kunkel case. The statute in this case says where someone is disabled, the testing agency shall accommodate that person. It does not say, it's not even close to what the standard is for an employee. Then why are you arguing this part about regarded as? What does regarded as have to do with this case? Okay, regarded as is one of the three ways someone becomes disabled. And it doesn't say it has to be regarded by the employer or by the testing agency. Regarded as, but it is in this case. Let me stop you there. Because one alternative is to prove he's disabled. And you haven't elected to go down that road. I agree. Well, it can't be that he's regarded by somebody out there in the world that he's disabled. The point of it has to be either he is disabled as a factual conclusion to be made by the court, or he's regarded as disabled by the person who's discriminated against him. Well, you just conceded that the board didn't regard him as disabled. So what's left? What's left is that the board made a mistake. And we went to court. Well, you could have argued that he was disabled. But you didn't argue that to us. Your Honor, yes, I agree. I didn't argue that. Mr. Domenici, let me, if I understand your argument, I thought your argument is basically that the board treated other people who were similarly situated as deserving an accommodation. The board, yes. Excuse me. I don't want to interrupt you. That's absolutely the truth. The board regards people who have a diagnosis of ADHD as disabled. They even state that in their brief, essentially. And so, but they don't, if I understand it, they don't necessarily say you are disabled within the meaning of the ADA. They say we're going to give you an accommodation. You are making the legal conclusion, if I understand it, that having made accommodations to other people in the past, that means with similar problem, that that means that they, within the meaning of the statute, have regarded a person, regard a person in your client's position as being disabled. That's your position? That's their position, Your Honor. That's how they operate. No, but see, that means that they have, in essence, said someplace that a person with attention disorder is disabled within the meaning of the ADA. Absolutely. What is in the record that says that they regard it as a disability within that definition? Well, but I think that also goes to, which I want you to address before, is you still have to, there still has to be a showing that it affects a major life activity. And what's in the record that shows that the NBME exam is a major life activity? And I'm concerned about our precedent in Wong on that. Well, let's take it a step at a time. That's okay. First of all, yeah. If the disability within the statute means, disabled means interfering with a major life activity. Yes. So what is there that shows that the board treated other people with this problem as having a disability in that sense? Okay. What we did, what I attached at Tab 137 is 40 samples, which the district judge allowed me, 40 random samples. And the form of those samples is they send your file to a psychologist to see if he agrees with your diagnosis under DSM-IV with ADHD. Every time he agrees with that diagnosis, he recommends an accommodation under the ADA and they are granted an accommodation under the ADA. All right. But I guess, but the problem is that your client is, has been a successful businessman and completed pharmacy school, was a successful pharmacist. And so why doesn't that take it to the Wong case? Because he is still, he still meets the DSM criteria of ADHD from a factual question. In fact, the trial judge said there's a factual issue whether he has ADHD. And my position It's a different issue. We're mixing up the question of whether or not he is disabled in, straight away. And the question of whether or not the board regards him as disabled and, therefore, they're stopped to say that they're not going to give him this accommodation. Absolutely. But the trial judge, I think, indicated there is a factual question whether he has ADHD. That's a decision on summary judgment. Then the trial judge goes on to say, but he's not disabled. My position is, and then the trial judge discounts the whole regards as. And then they cite CONCL, which is an employment case. And we've looked at those cases. None of those apply to a testing case. Testing requires a mandatory accommodation if you're disabled. Employment cases say you have to be presently The trial court disregards the regards as because it's undisputed that they said he wasn't disabled, right? That's not what the trial court said. The trial court cited a case that said a diagnosis alone is not enough. That's what the trial court relied on. He said, and my position is, when, in fact, a diagnosis is sufficient, which it absolutely is for this organization that is in charge of this, they absolutely rely on a diagnosis to determine someone is disabled. There's no second step. The lawyers bring in the second step. The testing agency doesn't take the second step. If the diagnosis is ADHD, they give the accommodation. And that's my tab 137. I showed their forms. They go to a psychologist. Does he have DSM-IV, and I see my time is out. I'll finish the sentence. Does he have DSM-IV ADHD? If the answer is yes, he gets an accommodation. And after that, these people get accommodations every single time they apply again, automatically. So they are continually regarded as, once they are diagnosed, they are forever regarded as, by this organization, as disabled. And where they're regarded as disabled, under 42 U.S.C. 12-189, not the statute cited in Kunkel, the statute dealing with testing, where someone is disabled, they shall be accommodated. So there's a distinction there with the employment line of cases. We've used your time. We'll give you a minute. I thought it was very brief. But we need to hear from the board. May it please the Court, Rhonda Fisk appearing on behalf of the National Board of Medical Examiners. We would ask that the Court affirm the district court's finding that Dr. Krolik has failed to establish a triable issue of fact as to whether his impairment substantially limits a major life activity. That is the issue that is before this Court, and that is the issue that plaintiff has There are three different issues that we would like to raise. One, as Judge Clifton pointed out, the National Board of Medical Examiners does not regard Dr. Krolik as disabled. In fact, the board does not regard Dr. Krolik as having ADHD. The board does not regard him as being limited in a major life activity. But what the Court below focused on, and what this Court most focused on, is whether he is substantially limited in a major life activity as compared to most people. And the district court found below, after a very lengthy analysis, that in fact he was not substantially limited. He had had a very successful career as a pharmacist. He had had a very successful career as a businessman, running a multimillion dollar business. Well, what do you do with the fact that the evidence indicates that other people who have the same difficulty have been given an accommodation? Can that simply be ignored and said, well, this fellow has been a pharmacist, and so therefore we're going to treat him differently because he's been successful? We're going to give him less accommodation than we give somebody who's a failure? No, Your Honor. We would not say that we would disregard the fact that he is successful. What you must do, though, when looking at the other evidence that's in the record, the evidence in the record is 40 test cases that were taken randomly from the records, and we were asked to provide those to the plaintiff and show what the basis was for the determination. Well, is there any evidence to suggest that the NBME agrees with a diagnosis of ADHD, that it automatically presumes impairment of the major life activity? Absolutely not, and that would be my point. Would you finish your answer to the other question? What is this evidence? Where does it take us? There are a sample of 40 records, and of those 40 records, 10 of those individuals received accommodations. They were all reviewed by experts, and the experts concluded in 10 instances that those individuals, yes, were entitled to accommodations because they had an impairment. Once the expert determines whether or not an individual has an impairment, then that record is sent to the NBME, who then makes the determination, is this individual disabled under the definition of the ADA, which requires not only an impairment, but an impairment of a major life activity, and that one be substantially limited in that major life activity. That is an independent determination made by the National Board of Medical Examiners after the expert determines the impairment. Is this an individualized determination? It is an individualized determination under the law, and it is an individualized determination that is done by the National Board of Medical Examiners. They review every record independently to determine whether or not that individual's impairment substantially limits a major life activity. So in this instance, there was a determination that, in fact, if Dr. Krolik did have an impairment, which the National Board did not feel he did, its expert found that he did not, that it did not substantially limit any major life activity. So going back to the earlier question, does the board do an individualized analysis? Yes. Does the board grant accommodations for individuals with ADHD when they are substantially limited in a major life activity? Yes. But that is not the case every single time. In fact, the board's website does not say, as the plaintiff would like us to believe, that if you have ADHD, you will receive an accommodation. The question isn't do you have ADHD. The question is are you disabled under the ADA. If you have ADHD, you may have an impairment, but that does not mean that you are substantially limited in a major life activity. Well, I'm hearing appellant to say that these 40 cases somehow create a triable issue, and obviously these 40 cases are not all there. So what do we do with them? The 40 cases are there, Your Honor, only to show that the National Board does an individualized analysis of each individual case. And so what you do with those cases is look at them and say, in this case, if you do an individualized analysis, has the plaintiff raised a genuine issue of triable fact as to whether or not he is substantially limited in major life activity? So you have to look at the facts that are in the record and determine whether or not there is even a genuine issue of material fact. The fact of the matter is plaintiff's own testimony, plaintiff's own evidence show that he is not substantially limited. So what you do with those cases is use those to say, clearly the board goes back and does an individualized determination we have to do an individualized determination in this case. We found that he was not disabled. And there is no evidence in the record that raises a genuine issue of material fact. As to whether he can perform, that he's limited in a life activity. As to whether he is substantially limited in a major life activity, yes. There is a question. The last issue I wanted to raise was that Dr. Krolik has suggested that the NBME does not follow its own policies and it refers to testimony that was given by Dr. Gordon and it cites that testimony in the reply. That reply testimony does not indicate that the NBME does not follow its own policies. To the contrary, all that it suggests is what I discussed earlier, that an expert goes through and does an analysis to determine whether there is an impairment and then makes a recommendation to the National Board of Medical Examiners.  The last issue I would like to raise is even if we assume that Dr. Krolik is disabled or regarded as disabled, I'm sorry, as plaintiff would like us to believe, under this court's decision in Kaplan, he is not entitled to accommodations. Now, plaintiff would like us to believe that because it is an employer case, it doesn't apply in this instance. Yes, those claims were brought under Title I rather than Title III. But the fact of the matter is the regarded as definition applies in all instances. In Title I, II, and III, and the analysis would be the same. Is this person, because they are regarded as disabled, entitled to accommodation? And under Kaplan, the answer is clearly no. If there are no further questions. Thank you. We would ask that you affirm. Thank you for the one-minute rebuttal. I just want to be sure the record is clear what we showed the trial judge. We asked for 40 random, the trial judge ordered them to give us 40 random decisions. They gave us one, and this is the first page behind tab 137. That, as an example, file 13, Dr. Gordon, no discussion of major life activities. All he does is go through DSM-II. But what is the disputed evidence that Mr. that your client, Mr. Krolik, is substantially limited? What is disputed? Your Honor, we're not pursuing that. We're saying he is, the dispute is how DSM-IV applies to my client. We have two medical doctors saying he has ADHD. Do I understand you to concede that there is no disputed, there is no material issues of disputed facts on whether, on this record, that he's substantially limited in life activity? Only to the extent that that's embodied in DSM-IV, which is what they argue in their brief. They say DSM-IV embodies life activities, and therefore we don't do anything other than DSM-IV. That's what their footnote is on the last page of their brief. And that's, we asked them for their complete rationale. And what they provided us is this page for file 13, there is no discussion of anything other than DSM-13. And we then followed up and said, is that your complete rationale, or do you want to supplement that? Exactly opposite of what the counsel just said. Yeah, but a lot, I've looked at some of these other files, and they contain a lot of information. A few do, and many don't. Many of them don't, though, Your Honor. All they do is say, does this person fall under DSM-IV? And the trial judge conceded. There's a dispute over that. And our position is, we have two doctors saying it is, and they have one who basically just did a file review. And we do have a patient with ADHD.  Thank you. Thank you, Your Honor. The case just argued is submitted for decision. I'm going to put this back together. Before hearing the next two cases, the court will take a brief five-minute recess. All rise. This court stands on recess for five minutes.
judges: Schroeder, Clifton, Callahan